IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTAY BREWER,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>SUPERINTENDENT, SCI COAL TOWNSHIP, et al.,<br><br>　　　　　　Respondents. | CIVIL ACTION<br>NO. 15-5078 |

**OPINION**

**Slomsky, J.**                                                    **August 12, 2016**

**I.      INTRODUCTION**

Before the Court is the Petition for Writ of Habeas Corpus of Petitioner Dontay Brewer, a state prisoner, filed pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  United States Magistrate Judge Marilyn Heffley issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued.  (Doc. No. 16.)  Plaintiff has filed Objections to the R&R (Doc. No. 17), and also has filed a Motion to Supplement his Objections (Doc. No. 19).  Prior to the filing of the R&R, Petitioner filed a Motion to Stay and Abey the Disposition of the Petition.  (Doc. No. 12.)  For reasons stated below, the Court will grant the Motion to Supplement the Objections (Doc. No. 19) and approve and adopt the R&R (Doc. No. 16).  The Petition for Writ of Habeas Corpus (Doc. No. 1) and the Motion to Stay and Abey Disposition of the Petition (Doc. No. 12) will be denied.[1]

---

[1] For the purposes of this Opinion, the Court has considered Petitioner's pro se Petition for Habeas Corpus (Doc. No. 1), the Response in Opposition to the Petition for Writ of Habeas Corpus (Doc. No. 9), Petitioner's Reply to the Response (Doc. No. 11), Magistrate Judge Heffley's Report and Recommendation (Doc. No. 16), Petitioner's Objection to the Report and Recommendation (Doc. No. 17), Petitioner's Motion to Supplement his Objections (Doc. No.

## II.    BACKGROUND

The underlying facts of Petitioner's state court conviction are as follows:

> [Brewer] was the head of a significant and sophisticated cocaine trafficking ring in Norristown, Montgomery County. He operated out of the stash house located at 235 East Chestnut Street, Norristown, Montgomery County. His codefendant, Simeon Spence, a/k/a, "Simmy" or "Sim", was his street level dealer. [Brewer] went to great lengths to avoid detection by law enforcement such as by registering numerous cellular phones and various vehicles in fictitious names, by maintaining his supply of cocaine at a stash house located at 235 East Chestnut Street, Norristown, Montgomery County, which was a residence of an associate, Craig Cole, and by consistently employing new cellular phones to thwart any potential wiretap investigations.
>
> The investigation into [Brewer] began in the summer of 2009 on suspicion that he was involved in drug trafficking. . . . In response to this general investigation, . . . a detective with the Montgomery County District Attorney's Office in charge of the Narcotics Enforcement Team ("NET Team"), initiated a wiretap investigation having received authorization from the Pennsylvania Superior Court regarding four phones [sic] numbers believed to be connected to [Brewer] and Cole. . . . The wiretap investigation spanned from October 10, 2009 until October 26, 2009, at which time [Brewer] was arrested. . . . In addition to the wiretaps, this investigation also involved video surveillance and physical surveillance. . . .
>
> Through the use of the wiretaps, detectives of the NET Team with the Montgomery County District Attorney's Office, captured phone calls and text messages between [Brewer] and Spence and [Brewer] and Cole. The detectives also used video surveillance of 235 East Chestnut Street and physical surveillance of that location and the surrounding area. Using these investigative techniques, a pattern emerged. Spence would call [Brewer] to place an order for drugs. [Brewer] then reached out to Cole, so he could gain access to the stash house. Once Cole would arrive at his residence/stash house, [Brewer] would show up in the alley behind that location. After [Brewer] would retrieve the cocaine from Cole, he would then meet up with Spence to deliver it to him.
>
> Specifically, [Brewer] retrieved $4,800.00, approximately 125 grams, worth of cocaine from Cole from the stash house on October 11, 2009, and then delivered it to Spence the following day so Spence could sell the drugs to his customer. . . . On October 16, 2009, Spence contacted [Brewer] again, this time ordering a half-ounce of cocaine. . . . [Brewer] then contacted Cole to get the cocaine from the stash house. [Brewer] retrieved the cocaine from Cole and then met up with Spence to deliver it to him. . . . On October 19, 2009, Spence confirmed an order

---

19), Petitioner's Motion to Stay and Abey Disposition of the Petition (Doc. No. 12), the Response in Opposition to Stay and Abey (Doc. No. 14), Petitioner's Reply to the Opposition to Stay and Abey (Doc. No. 15), and the pertinent state court record.

he had put in to [Brewer] for $4,800.00, approximately 125 grams, worth of cocaine. . . . [Brewer] met with Cole later that day to retrieve the cocaine, and then later delivered it to Spence. . . . Finally, it was arranged that on October 26, 2009, [Brewer] would retrieve a half ounce of cocaine from Cole, and would later deliver it to Spence. . . . However, [Brewer] never completed the retrieval of cocaine from Cole because it was determined that the wiretap investigation should come to an end and [Brewer] should be arrested. . . . At the time of [Brewer's] arrest on October 26, 2009, a search of his person by Detective James Vinter, a detective with the Montgomery County District Attorney's Office assigned to the NET Team, uncovered a sandwich bag containing 12.38 grams of what was later confirmed to be cocaine in his left front pants pocket. . . . Approximately $2,500 in cash was found on his person. . . . [Brewer] was arrested after the search.

During the investigation, there were various locations which became significant, including the 235 East Chestnut Street stash house and 1015 West Beech Street, Apt. B7, Norristown. . . . A search warrant was secured for 235 East Chestnut Street and was executed in part by Detective Michael Lebby. . . . Upon arrival at that location, the detective made his way up to the third floor rear bed room and encountered Cole. . . . Cole, whose arms were covered in a white powder, was observed by Detective Lebby throwing a blue canvas bag out of the window. . . . A search of that location revealed in significant part 69 small red jars with an imprint of a butterfly on the lids, numerous cellular phones, green transparent bags, a bottle of Inositol, 703.70 grams (24.77 ounces or 1½ pounds) of cocaine, a baggie containing marijuana and a scale. . . . During the search of the outside of 235 East Chestnut Street the blue canvas bag thrown out of the window by Cole was recovered. Inside the bag was a scale, sandwich bags and Inositol. . . .

The Beech Street location was searched . . . [and a] detective found in part documents in the name of Damien Solomon, a container of acetone, a shoe box containing a calculator and $9,000 in cash, photographs of [Brewer], a vulcanizer press, various paperwork in [Brewer's] name, a bag containing 19.67 grams of cocaine, service agreements for multiple cellular phones, a title for a 1997 Honda, a paper containing phone numbers, numerous cellular phones, [Brewer's] identification card and documents in the name of Damien Solomon.

(Doc. No. 9-1 at 1-5.)

On January 27, 2011, a jury convicted Petitioner of running a corrupt organization and conspiring to commit the same offense, delivery of a controlled substance, possession of a controlled substance, criminal conspiracy to violate the Controlled Substance, Drug, Device and Cosmetic Act, criminal use of communications facility, and possession of drug paraphernalia. (Doc. No. 16 at 1; Doc No. 9-1 at 1.)  On March 28, 2011, Petitioner was sentenced to twenty-

one to sixty years' imprisonment, which included five mandatory minimum terms imposed under state law, 18 Pa.C.S. § 7508.  (Doc. No. 9-1 at 14-15; Doc. No. 16 at 2.)  On May 24, 2012, on direct appeal, the Pennsylvania Superior Court affirmed the judgment of sentence, and on January 10, 2013, the Pennsylvania Supreme Court denied a petition for allowance of appeal. (Doc. No. 9-1 at 23, 27.)

 On December 3, 2013, Petitioner filed a petition for post-conviction relief in state court pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq., raising issues of trial and appellate counsels' ineffectiveness and whether his sentence was constitutional.  (Id. at 29-30.)  On September 30, 2014, the PCRA court dismissed his petition without a hearing. (Id. at 43.)  On April 28, 2015, the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Petitioner's PCRA petition.  (Id. at 56.)

On September 10, 2015, Petitioner filed the present Habeas Petition with this Court. (Doc. No. 1.)  On September 15, 2015, Petitioner filed a second PCRA petition in state court, raising new claims not raised in his first PCRA petition.  (Doc. No. 16 at 5.)  On January 11, 2016, Petitioner filed a Motion to Stay and Abey disposition of his Habeas Petition in this Court to allow the second PCRA court to rule on the issues raised in his habeas petition, thereby exhausting state court remedies.  (Doc. No. 12.)

In his Petition for Writ of Habeas Corpus, Petitioner asserts the following claims: 1) trial counsel was ineffective for failing to present a co-conspirator as a witness; 2) trial counsel was ineffective for failing to timely file a motion to suppress evidence; 3) PCRA counsel was ineffective for failing to raise a claim that Petitioner's sentence was unconstitutional under Alleyne v. United States, 133 S. Ct. 2151 (2013); 4) trial and appellate counsel were ineffective for failing to correct the discrepancy between his sentence as orally stated by the trial court and

as it appeared in the written judgment; and 5) Petitioner's sentence violates the due process clause because the statute under which he was sentenced has been declared unconstitutional. (Doc. No. 1 at 12-17.)

On June 28, 2016, Magistrate Judge Heffley issued an R&R in which she recommended denying both the Petition and the Motion to Stay and Abey. (Doc. No. 16.) On July 5, 2016, Petitioner filed Objections to the R&R. (Doc. No. 17.) On July 18, 2016, Petitioner filed a Motion for Leave to File Supplemental Objections, and attached the supplemental Objections to the Motion. (Doc. No. 19.) As noted, the Court will grant Petitioner's Motion for Leave to File Supplemental Objections, approve and adopt the R&R, and deny both the Petition for a Writ of Habeas Corpus and the Motion to Stay and Abey.

### III.    STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas Petition may not be granted on any claim which was adjudicated on the merits in State court proceedings unless Petitioner can show that the adjudication of the claims either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Woodford v. Visciotti, 537 U.S. 19, 21 (2002). Under the AEDPA, review of state court legal and factual determinations is highly deferential. See Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) ("'[T]he AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.' Factual determinations made by the state court are presumed to be correct, but may be rebutted by clear and convincing evidence.") (internal quotation omitted). If a state court did not adjudicate a claim on the merits, however, the deferential standard of the AEDPA does

not apply.  Id.  Rather, in such cases, "the federal habeas corpus court must conduct a de novo review over pure legal questions and mixed questions of law and fact . . ."  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)).

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate judge's report and recommendation.  Id. § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina College v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely

upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.   ANALYSIS

Petitioner raises eleven Objections to the R&R.[2]  The Court will review them seriatim.

### A.  Objection for Failure to Consider Case Law

Petitioner's first Objection appears to be that Magistrate Judge Heffley did not consider several cases in concluding that Petitioner's Alleyne claim is meritless.  (Doc. No. 17 at 1; Doc. No. 19 at 2.)  In Alleyne, the United States Supreme Court held that any fact that increases a mandatory minimum sentence for a crime must be submitted to the jury and found beyond a reasonable doubt.   133 S. Ct. at 2155.   Magistrate Judge Heffley correctly determined that Alleyne announced neither a new substantive ruling of constitutional law nor a watershed rule of criminal procedure, and that it does not apply retroactively to final convictions on collateral review, but rather only to cases that were still on direct review when Alleyne was decided.  (Doc. No. 16 at 16 (citing United States v. Reyes, 735 F.3d 210, 212 (3d Cir. 2014)).)  Alleyne was decided after Petitioner's conviction became final, and thus it has no application to Petitioner's sentence under federal jurisprudence.[3]  Petitioner cites three decisions in his Objections and Supplemental Objection that, he argues, refute Magistrate Judge Heffley's findings.  All three cases are inapposite.

---

[2] Petitioner advances the same arguments in "Objection I" as in "Objection XI."  (Doc. No. 17 at 20-21.)  Therefore, the analysis provided in addressing Petitioner's first Objection applies to his eleventh Objection, and the Court need not repeat itself.

[3] On January 10, 2013, the Pennsylvania Supreme Court denied his petition for allowance of appeal.  (Doc. No. 9-1 at 29.)  His conviction became final ninety days later on April 15, 2013—the last day that he could have filed a petition for writ of certiorari in the United States Supreme Court, which he did not do.  (Id. at 53.)  Alleyne was decided June 17, 2013.  133 S. Ct. 2151.

Petitioner first relies on <u>Commonwealth v. Wolfe</u>, 2016 WL 3388530 (Pa. June 20, 2016), for the proposition that "mandatory minimum penalties are illegal."  (Doc. No. 17 at 1.)  The court in <u>Wolfe</u> held that Pennsylvania's mandatory minimum sentence for involuntary deviate sexual intercourse is unconstitutional.  <u>Wolfe</u>, 2016 WL 3388530.  Petitioner was not convicted of involuntary deviate sexual intercourse.  Petitioner next cites <u>Welch v. United States</u>, No. 15-6418 (U.S. Apr. 18, 2016), in which the United States Supreme Court held retroactive its holding in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  (Doc. No. 17 at 2.)  Petitioner was not convicted under the Armed Career Criminal Act.  Neither of these cases have any application to Petitioner's case.

Finally, Petitioner relies on <u>Commonwealth v. Ciccone</u>, No. 3114 EDA 2014, 2016 WL 3902841 (Pa. Super. July 12, 2016), for the proposition that minimum sentences imposed under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 18 Pa.C.S. § 7508, of which Petitioner was convicted, are both illegal and can be corrected by the state court "via a *timely* PCRA petition, irrespective of whether retroactive application of the underlying constitutional ruling is *required* under the *Teague* framework."  (Doc. No. 19 at 2); <u>Ciccone</u>, 2016 WL 3902841, at *9.  However, in <u>Ciccone</u>, the Pennsylvania Superior Court noted that the holding in that case was limited only to the state court's authority to correct an illegal sentence and had no application to collateral review in the federal habeas context.  <u>Ciccone</u>, 2016 WL 3902841, at *7 (citing <u>Danforth v. Minnesota</u>, 552 U.S. 264, 280-81 (2008)).  Therefore, if Petitioner wishes to avail himself to the protections afforded by <u>Ciccone</u>, he must seek further relief in state court.  This Court is unable to grant his request relief because it is required to

follow the Third Circuit's decision in <u>Reyes</u>.  735 F.3d at 212 (holding that <u>Alleyne</u> does not apply retroactively on collateral review).

Accordingly, Petitioner's first Objection is without merit.

**B.  Objection to Statement of Facts and Procedural History**

Petitioner next objects to Magistrate Judge Heffley's description of Petitioner as "the head of a significant and sophisticated cocaine trafficking ring," arguing that there is no underlying evidence to support this characterization.  (Doc. No. 17 at 6.)  Those were not Magistrate Judge Heffley's words; they came from an excerpt of the state trial court description of the underlying facts that led to Petitioner's conviction.  (Doc. No. 16 at 2; Doc. No. 9-1 at 1.)  Even so, it is unclear how this post-conviction characterization of Petitioner has any bearing on the constitutionality of his conviction, which is the basis for the federal habeas relief he seeks. This Objection is without merit.

**C.  Objection to Dismissal of Petitioner's Second PCRA Petition as Untimely**

Petitioner next appears to object to the PCRA court's dismissal of his second PCRA petition as time-barred.  This Objection is made to the PCRA court's decision, not to anything contained in the R&R or to anything related to the constitutionality of Petitioner's state court conviction.  Therefore, this Objection is without merit.

**D.  Objection to Exhaustion and Procedural Default Standard of Review**

Petitioner next claims that the R&R "does not present an accurate discussion of exhaustion and procedural default."  (Doc. No. 17 at 8.)  Although uncertain as to what this Objection relates to, this Court will construe it as an objection to Magistrate Judge Heffley's stated standard of review.  Specifically, Petitioner argues that the standard of review, as stated, does not address procedural default as it relates to claims made under <u>Martinez v. Ryan</u>, 566 U.S.

1 (2012).  (<u>Id.</u>)  First, Magistrate Judge Heffley correctly—and thoroughly—stated and applied the right standard of review.  Second, the R&R contains a rigorous analysis of the interplay between <u>Martinez</u> and procedural default in the discussion sections of Petitioner's pertinent claims.  (<u>See</u> Doc. No. 16 at 9-15.)  Petitioner merely disagrees with the organization of the R&R, and his Objection is not a meritorious one.

### E.  Objection to Facts in Footnote 4

Petitioner next Objects to "Page 12, Note 4 because it is[] totally and completely wrong." (Doc. No. 17 at 11.)  Petitioner contests that Craig Cole, Petitioner's co-conspirator, in fact did not plead guilty.  (<u>Id.</u>)  Mr. Cole, however, agreed to a stipulated bench trial in which he waived his rights to present defense evidence, and he accepted as true the evidence against him presented by the Commonwealth.  (Doc. No. 9-1 at 69-70, 81-82.)  This evidence included the fact that Mr. Cole was involved in a conspiracy with Petitioner to illegally distribute drugs.  (<u>Id.</u> at 76-81.) Therefore, the R&R's characterization of this proceeding as a guilty plea is of no consequence to Judge Heffley's analysis that follows, which concludes with the observation that Mr. Cole's testimony at Petitioner's trial would not have exculpated Petitioner of any alleged conspiratorial activity for which he was convicted.  As such, this Objection is meritless.

### F.  Objection to Deference to State Court Decision

Petitioner next objects to the R&R's "exaggerate[d] degree of deference that the federal court must give to the . . . state court system."  (Doc. No. 17 at 12.)  Petitioner does not cite to any particular part of the R&R in which deference to the state courts' decisions was inappropriate or "exaggerated," nor does Petitioner offer any alternative standard to which Magistrate Judge Heffley should have adhered.

It appears that Petitioner objects to Magistrate Judge Heffley's deference as it relates to Petitioner's ineffective assistance of counsel claims.  (Doc. No. 12.)  As noted above, habeas review of state court legal and factual determinations is made under a deferential standard.  Palmer, 592 F.3d at 392 ("'[T]he AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.'  Factual determinations made by the state court are presumed to be correct, but may be rebutted by clear and convincing evidence.").  Moreover, a federal court's habeas review of a state court's rejection of a petitioner's ineffective assistance of counsel claim is also made under a "highly deferential" standard.  Yarborough v. Gentry, 540 U.S. 1, 6 (2003) ("Judicial review of a defense attorney's summation is therefore highly deferential[] and doubly deferential when it is conducted through the lens of federal habeas.").  Thus, the standard employed is deferential in this context, and there is no indication from a reading of the R&R that Magistrate Judge Heffley departed from this standard or exceeded it.  Petitioner does not describe one example of such a departure.  Therefore, this Objection is without merit.

### G. Objection to Ineffective Assistance of Counsel Analysis Regarding Failure to Present a Co-Conspirator as a Witness

Petitioner's next two Objections relate to Magistrate Judge Heffley's finding that Petitioner had failed to establish a meritorious ineffective assistance of counsel claim regarding trial counsel's failure to present Petitioner's co-conspirator as a witness at trial and PCRA counsel's failure to raise a claim of trial counsel's ineffectiveness on collateral review.  (Doc. No. 17 at 13-17.)  Petitioner's Objections are without merit.

Plaintiff contends that trial counsel was ineffective under Strickland for not interviewing and calling as a witness Petitioner's co-conspirator, Mr. Cole, who "would give testimony that would undermine the Commonwealth's theory . . . that Petitioner was a conspirator" in the drug

ring.  (Id. at 13.)  In Strickland, the United States Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must meet two requirements: 1) he must show "that counsel made errors so serious" that were "outside the wide range of professionally competent assistance"; and 2) he "must show that the deficient performance prejudiced the defense" and was "so serious as to deprive [him] a fair trial."  Id. at 687-90.  When a federal court reviews a state court's rejection of an ineffective assistance of counsel claim under 28 U.S.C. § 2254, it must be deferential to the state court's decision unless that decision is contrary to clearly established federal law, or if it is objectively unreasonable.  Yarborough, 540 U.S. at 6. In considering objective reasonableness, a court cannot fault counsel for failing to pursue a meritless claim.  Werts v. Vaughn, 228 F. 3d 178, 203-204 (3d Cir. 2000).

Here, trial counsel was not ineffective for not interviewing or calling Mr. Cole as a witness.  At a stipulated bench trial held before Petitioner's trial, Mr. Cole conceded that he had conspired with Petitioner to distribute cocaine.  (Doc. No. 9-1 at 81-82.)  There is no reason to believe that Mr. Cole would have testified to the contrary at Petitioner's trial when Mr. Cole did not contest those facts at his own trial—facts that he accepted as true.  Under Strickland, it is far from being a "serious error" for counsel to refrain from presenting a witness who would have inculpated Petitioner of the charges.  And, as Magistrate Judge Heffley correctly noted, even if the speculative testimony would have confirmed that the cocaine in question belonged to Mr. Cole and not Petitioner, Petitioner would still have been guilty of possession as a conspirator as a matter of law.  See Commonwealth v. Perez, 931 A.2d 703 (Pa. Super. Ct. 2007).  Similarly, PCRA counsel was not ineffective for failing to raise a meritless claim of trial counsel's ineffective assistance.  As such, neither trial nor PCRA counsel were ineffective for pursuing a meritless claim.  See Werts, 228 F. 3d at 203-204.

### H. Objection to Finding that Trial Counsel Was Not Ineffective For Not Filing a Timely Motion to Suppress Evidence

Petitioner objects to Magistrate Judge Heffley's finding that trial counsel was not ineffective for failing to file a timely motion to suppress evidence, which Petitioner asserts "had considerable merit." (Doc. No. 17 at 17.) This Objection is without merit.

Despite the fact that the motion to suppress was untimely filed, the trial court still reviewed the motion on its merits. (Doc. No. 9-1 at 34-36.) In denying the motion, which was based on a lack of probable cause to search the property at which evidence was seized, the trial court thoroughly explained why probable cause existed to search the property and why the motion must be denied. The court considered "100 pages [of] an ongoing drug delivery criminal enterprise . . . [that] describes various locations in which the drug activity comes forth . . . [and] also describe[es] the use of multiple telephones and multiple vehicle[s] . . . [and] information from confidential informants." (Id. at 34-35.) The court considered evidence of numerous intercepted phone calls that demonstrated the "large-scale and ongoing nature of [the] operation," including surveillance of Petitioner at the searched location. (Id. at 35.)

Petitioner objects that the court "did not set forth facts from which a reasonably knowledgeable and independent judicial officer would believe that [drugs] would be found inside the premises" of the searched property. (Doc. No. 17 at 18.) To the contrary, three "reasonably knowledgeable and independent judicial officer[s]"—from the Pennsylvania Court of Common Pleas, the Pennsylvania Superior Court, and United States Magistrate Judge Heffley—all agreed that there was probable cause to search the premises. This Court will be the fourth one to agree. Accordingly, this Objection is without merit.

13

### I.   Objection to Finding that PCRA Counsel Was Not Ineffective For Failing to Raise <u>Alleyne</u> Claim

Plaintiff's last Objection is that PCRA counsel was ineffective for not raising a claim under <u>Alleyne</u> in the PCRA petition because Petitioner's sentence illegally resulted from facts considered by the judge and not the jury.  (Doc. No. 17 at 19.)  Given the foregoing analysis, this claim fails on its merits.  First, the federal courts within this Circuit do not hold <u>Alleyne</u> to apply retroactively on collateral review.  <u>Reyes</u>, 735 F.3d at 212.  Second, in as much as the Pennsylvania judiciary would apply <u>Alleyne</u> retroactively to the statute under which Petitioner was sentenced, that application would not have become evident until the Pennsylvania Superior Court's recent holding in <u>Ciccone</u>, which was filed after Petitioner's PCRA petition was considered and dismissed by the state courts.  Therefore, PCRA counsel was not ineffective given the law at the time the PCRA petition was filed.  This Objection is without merit.

### J.   Motion to Stay and Abey Will Be Denied

Petitioner moves this Court to "stay and abey disposition of the federal habeas petition pending disposition of the second PCRA petitioned now pending in the PA Superior Court." (Doc. No. 12 at 7.)  The Superior Court affirmed the denial of Petitioner's second PCRA petition on June 21, 2016.  <u>Commonwealth v. Brewer</u>, No. 3084 EDA 2015 (Pa. Super. Ct. June 21, 2016).  Therefore, this Motion will be denied as moot.

## V.   CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Heffley's Report and Recommendation and will deny Petitioner's Petition for Writ of Habeas Corpus and Motion to Stay and Abey Disposition of the Petition.  An appropriate Order follows.